UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:22-cr-00148-JAW-01 |
| | ) | |
| KELLY BALLINGER | ) | |

**ORDER ON DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

A defendant who pleaded guilty to conspiracy and embezzlement charges now moves to withdraw her guilty plea, arguing that her guilty plea was not made knowingly, intelligently, and voluntarily because she had not received information as to the loss amount until after she entered her plea and her former counsel advised her to enter her plea prior to receipt of the same. Given the defendant's representations to the court at the change-of-plea hearing, the substantial delay between her plea and her motion to withdraw, the lack of any assertion of actual innocence, and that any disputes with the loss amount in the presentence investigation report do not justify a plea withdrawal and are properly resolved at a sentencing hearing, among other things, the court concludes the defendant failed to meet her burden to demonstrate a fair and just reason to withdraw her guilty plea and, thus, denies her motion.

## I.    PROCEDURAL BACKGROUND

On December 2, 2022, a federal grand jury indicted Kelly Ballinger on one count of embezzlement from an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A) (Count 1), and one count of alteration of a postal money order, in violation of 18 U.S.C. § 500 (Count 2). *Indictment* (ECF No. 1). The indictment

also included a forfeiture allegation. *Id.* at 2. On January 18, 2023, Attorney Ronald Bourget entered his appearance on behalf of Ms. Ballinger as retained counsel. *Entry of Appearance* (ECF No. 14). Ms. Ballinger appeared before United States Magistrate Judge Karen Frink Wolf on January 18, 2023, entered a plea of not guilty on both counts, and was released on a $20,000 bond. *Min. Entry* (ECF No. 15).

The grand jury subsequently brought a superseding indictment, adding an additional charge against Ms. Ballinger of conspiracy to alter postal money orders, in violation of 18 U.S.C. §§ 371 and 500 (Count 3). *Superseding Indictment* (ECF No. 36). Ms. Ballinger again appeared before Magistrate Judge Wolf on November 27, 2023 and entered a plea of not guilty on all three counts. *Min. Entry* (ECF No. 48).

The United States (the Government) and Ms. Ballinger subsequently reached a plea agreement, *see Agreement to Plead Guilty (with Stips. And Appeal Waiver)* (ECF No. 54) (*Plea Agreement*), and Ms. Ballinger entered a guilty plea as to Count 1, embezzlement from an organization receiving federal funds, and Count 3, conspiracy to alter postal money orders, of the superseding indictment in this Court on May 1, 2024. *Min. Entry* (ECF No. 58). Pursuant to the plea agreement, the United States agreed to move to dismiss Count 2, alteration of a postal money order, of the superseding indictment at the time of sentencing. *See Plea Agreement* at 1.

In advance of Ms. Ballinger's sentencing, the United States Probation Office (PO) prepared a customary presentence investigation report (PSR), *Presentence Investigation Rep.* (ECF No. 62) (*Initial PSR*). Attorney Bourget filed objections to the PSR on July 11, 2024, *Def.'s Objs. to the Presentence Rep.* (ECF No. 65); the

Government filed its own objections the next day. *Gov't's Resp. to the Draft Pre-Sentence Rep.* (ECF No. 66). On July 9, 2024, the PO issued a revised PSR, with an addendum addressing the objections of the parties. *Revised Presentence Investigation Rep.* (ECF No. 67) (*Revised PSR*).

On November 13, 2024, the parties were notified that the sentencing hearing had been scheduled for January 22, 2025. *Notice of Hr'g* (ECF No. 85). However, on January 17, 2025, Attorney Bourget filed a motion to withdraw as Ms. Ballinger's counsel after sentencing, informing the Court that his relationship with his client had irretrievably broken down. *Mot. to Withdraw as Counsel After Sentencing* (ECF No. 88). Attorney Bourget's motion to withdraw was unusual in that it stated that the attorney-client relationship had "irretrievably broken down" but at the same time asked that the withdrawal be granted after the sentencing hearing. *Id.* at 1.

Concerned that Ms. Ballinger's right to effective counsel at sentencing may be implicated, the Court cancelled the sentencing hearing, *Notice of Cancelled Hr'g* (ECF No. 92),[1] and instead held a hearing on Attorney Bourget's motion to withdraw on January 31, 2025. *Min. Entry* (ECF No. 99). The Court discussed the contradiction between Attorney Bourget's representation that the attorney-client relationship had broken down and his willingness to continue to represent Ms. Ballinger through the sentencing hearing. Attorney Bourget confirmed that his relationship with Ms. Ballinger was very difficult. At the hearing, the Court issued an oral order granting Attorney Bourget's motion to withdraw, effective upon entry of new counsel as to Ms.

---

[1] The Court was also informed that Ms. Ballinger was ill and could not attend the scheduled sentencing hearing in any event.

Ballinger. *Oral Order* (ECF No. 100). The Court questioned Ms. Ballinger as to how long she needed to retain new counsel and, after some discussion, the Court gave Ms. Ballinger three weeks to retain a new defense lawyer.

Having received no updates regarding Ms. Ballinger's search for new counsel for well over a month, the Court held another hearing on March 14, 2025, this time granting Attorney Bourget's motion to withdraw effective immediately, informing Ms. Ballinger of her right to represent herself, and issuing its strong recommendation that Ms. Ballinger seek new counsel in this complicated case, either by requesting appointment of counsel by the Court based on financial need or by privately retaining another attorney. *Min. Entry* (ECF No. 102). The Clerk's Office subsequently scheduled a sentencing hearing for May 16, 2025. *Notice of Hearing* (ECF No. 103). On April 6, 2025, having heard nothing from Ms. Ballinger regarding her representation, the Court ordered Ms. Ballinger to provide an update no later than April 11, 2025 as to whether she intended to represent herself, seek appointment of counsel, or privately retain an attorney. *Order* (ECF No. 104). Ms. Ballinger filed the necessary financial affidavit for appointment of counsel on April 11, 2025, *Fin. Aff.* (ECF No. 105), and the Court approved her financial affidavit the same day. *Order* (ECF No. 106).[2] The Court appointed Attorney Thomas S. Marjerison as counsel for Ms. Ballinger on April 15, 2025.

---

[2] The Court granted Ms. Ballinger's request for appointment of counsel despite her affidavit, which revealed significant funds with which to pay an attorney. *See Fin. Aff.* at 2 (ECF No. 105). In granting Ms. Ballinger's motion, the Court considered how essential it was for Ms. Ballinger to be represented by counsel in a case of substantial complexity with a proposed guideline sentence range of 41 to 51 months and a proposed restitution obligation of $837,368. *Revised PSR* at 16-17. The Court also considered the need for a restitution order, which would virtually eliminate most of Ms. Ballinger's assets.

On May 15, 2025, Ms. Ballinger filed a motion to withdraw her guilty plea, arguing that her plea was not knowing, intelligent, and voluntary. *Def.'s Mot. to Withdraw Guilty Plea* (ECF No. 108) (*Def.'s Mot.*) at 3. In light of this motion, the Court held a conference of counsel, at which time defense counsel moved to continue sentencing, which the Court granted. *Min. Entry* (ECF No. 109); *Oral Mot.* (ECF No. 110); *Oral Order* (ECF No. 111).

The Government responded to Ms. Ballinger's motion to withdraw on May 23, 2025. *Gov't's Resp. to Def.'s Mot. to Withdraw Plea* (ECF No. 116) (*Gov't's Resp.*). Ms. Ballinger replied on May 28, 2025. *Def.'s Reply to Gov't's Resp. in Opp'n to Mot. to Withdraw Guilty Plea* (ECF No. 117) (*Def.'s Reply*). The Government also filed a stipulation as to the facts relevant to Ms. Ballinger's motion that are agreed upon by the parties. *Stipulation* (ECF No. 119). In accordance with Ms. Ballinger's request in her motion, *see Def.'s Mot.* at 4, the Court had scheduled an evidentiary hearing for June 4, 2025, but counsel alerted the Clerk's Office that in light of the stipulation, they did not consider an evidentiary hearing necessary, and the Court cancelled the hearing. *Notice of Cancelled Hr'g* (ECF No. 118).

## II.    THE PARTIES' POSITIONS

### A.    Kelly Ballinger's Motion

Ms. Ballinger moves to withdraw her plea, telling the Court that she "does not contend that there were any deficiencies with this Court's Rule 11 process" but nonetheless alleging that her plea was not knowing, intelligent, and voluntary because she did not receive the relevant audit reports from the Government prior to her plea, and because of prior counsel's advice that she should plead guilty without

the audit reports and his advice that she could litigate disagreements over the audit reports after the plea. *Def.'s Mot.* at 3.

Ms. Ballinger avers "she left substantial amounts of cash in the possession of Harbor Management that were not considered in the audit reports" and that related defendant Kathleen Conway "made false statements that were incorporated in the audit reports." *Id.* If she had been aware of the allegations in the audit report and false statements, Ms. Ballinger submits, she would not have pleaded guilty. *Id.*

The Defendant continues that "she brought these concerns to the attention of her prior counsel before her plea," but her prior "counsel did not act to secure the audits or address [her] concerns." *Id.* Ms. Ballinger again insists she would not have entered a guilty plea if her prior counsel had secured the audits or explained that she needed to litigate these issues through trial. *Id.*

For these reasons, Ms. Ballinger submits her decision to plead guilty was not knowing, intelligent, or voluntary, and the Court should thus permit her to withdraw her guilty plea. *Id.* at 3-4. She further requests a testimonial hearing to address the factual bases for her motion.[3] *Id.* at 4.

### B.    The Government's Response

The Government opposes Ms. Ballinger's motion, arguing that her motion filed "[l]ess than 24 hours before sentencing and more than a year after her Rule 11 proceeding" does not meet the legal standard required for the Court to permit her to withdraw her plea. *Gov't's Resp.* at 1.

---

[3]    As noted earlier, Ms. Ballinger subsequently withdrew her request for an evidentiary hearing in light of the June 2, 2025 stipulation.

In support, the Government begins with a recitation of the case's developments to this point. First, it directs the Court at length to statements made at Ms. Ballinger's Rule 11 hearing, in which the Government says Ms. Ballinger answered affirmatively the Court's questions regarding her competence, her desire to plead guilty to Counts 1 and 3, her actual guilt of those crimes, whether she had had enough time to discuss the charges against her in the superseding indictment, and whether Attorney Bourget had explained the elements of the charged crimes and their potential penalties. *Id.* at 1-3 (citing *Tr. of Rule 11 Proc.* at 3-10 (ECF No. 113) (*Rule 11 Tr.*). The Government also points out it moved at the Rule 11 hearing to dismiss the forfeiture allegation in light of the potential for a "significant restitution obligation," which the Court granted, *id.* at 2 (citing *Rule 11 Tr.* at 9), and further that the Court itself explained the nature of the charges and potential penalties to Ms. Ballinger in detail. *Id.* at 3 (citing *Rule 11 Tr.* at 11-15).

The Government next recounts how the Court established a factual basis for Ms. Ballinger's guilty plea at the Rule 11 hearing by asking Ms. Ballinger a series of questions regarding the contents of the prosecution version, to which she confirmed that she had carefully reviewed that document, had consulted with Attorney Bourget, did not disagree with anything set forth therein, and that the information contained in the prosecution version was true to her personal knowledge. *Id.* at 4 (citing *Rule 11 Tr.* at 18-19). The Government reports further that the Court inquired as to the plea agreement and a prior rejected plea offer, *id.*, before providing Ms. Ballinger

with an explanation of how the United States Sentencing Guidelines would be applied to her case. *Id.* at 4-5 (citing *Rule 11 Tr.* at 24-26).

Based on Ms. Ballinger's answers at the Rule 11 hearing, the Government says, the Court concluded she had knowingly and voluntarily tendered a plea of guilty on Counts 1 and 3, and accordingly accepted her guilty plea as tendered and ordered the PO to prepare the PSR. *Id.* at 6 (citing *Rule 11 Tr.* at 27). The Government avers that the Initial PSR, which was issued on May 30, 2024, attached a victim impact statement requesting restitution in the amount of $986,828. *Id.* (citing *Initial PSR*). The Revised PSR, issued on July 29, 2024, held Ms. Ballinger responsible for a loss of $837,368, recommended the Court withhold a sentence reduction for acceptance of responsibility based on obstructive conduct, and contained a statement from Attorney Bourget that Ms. Ballinger "does not know how much money was converted or where it all went." *Id.* (citing *Revised PSR* ¶¶ 18, 19).

Further, on October 15, 2024, the Government filed a status report explaining its loss calculation, *id.* (citing *Status Rep.* (ECF No. 79)); that same day, Ms. Ballinger filed a memorandum arguing she "has not been presented with sufficient evidence to determine the amount of loss as stated by the government." *Id.* at 7 (citing *Def.'s Mem. for Presentence Conf.*). The Government filed its sentencing memorandum on December 20, 2024, "outlining its view of the loss calculation and noting that the loss figure of $986,828 is the most favorable outcome to the defendant from the various audits," and concluding this amount of loss results in a 14-level increase pursuant to Section 2B1.1(b)(1) of the Sentencing Guidelines. *Id.* (citing *Gov't's Sentencing Mem.*).

Ms. Ballinger filed her own sentencing memorandum on January 13, 2025, in which she did not challenge the loss calculation and acknowledged the loss amount results in a 14-level increase. *Id.* (citing *Def.'s Sentencing Mem.*).

Pointing out that Ms. Ballinger does not challenge the Court's Rule 11 proceeding, the Government submits Ms. Ballinger's plea was voluntary, intelligent, and informed because "she knew the maximum penalties, admitted her guilt, and knew the guidelines would be calculated by the Court after receipt of the presentence report." *Id.* at 8.

Given this, the Government next argues Ms. Ballinger's proffered reasons for withdrawing her plea are inadequate, first noting that "[a] plea can be perfectly voluntary in the face of incomplete information[,]" *Id.* (quoting *United States v. Davey*, 550 F.3d 653, 656 (7th Cir. 2008)), and, second, arguing that the victim's audit reports are an issue that can and should be resolved at sentencing, just as Attorney Bourget advised her. *Id.* Ms. Ballinger is free to argue and present evidence that the audit reports are inaccurate at sentencing, the Government says. *Id.* at 8-9. Defendant's argument that she would have litigated loss amounts at trial is mistaken, the Government contends, because "[o]ther than jurisdictional loss amounts (which the defendant does not appear to challenge), loss is not an element of the charged offenses." *Id.* at 9.

The Government also takes issue with the timing of Ms. Ballinger's motion, emphasizing that the Defendant moved to withdraw her guilty plea over a year after it was entered and within twenty-four hours of the scheduled sentencing. *Id.* The

Government collects First Circuit caselaw viewing unfavorably motions to withdraw guilty pleas filed anywhere from thirteen days to six months after entering the plea. *Id.* at 9-10 (collecting cases from the United States Court of Appeals for the First Circuit). The Government next argues that Ms. Ballinger is not asserting her innocence, which is consistent with her lack of objection to the Revised PSR, admissions made at her Rule 11 hearing, and statements made in her sentencing memorandum. *Id.*

The Government adds that the parties reached a plea agreement in this case, *id.* at 11 (citing *Plea Agreement*), which accurately set forth the maximum penalties, did not contain an agreed-upon loss amount, and was not coercive. *Id.* While the Government insists all the above facts make an evaluation of prejudice to the Government unnecessary to deny the Defendant's motion, *id.* (citing *United States v. Gates*, 709 F.3d 58, 69 (1st Cir. 2013)), the Government argues, in the alternative, that its witnesses at trial would be elderly tenants whose rent was converted, and as such, the substantial lapse of time may prejudice the Government by permitting argument that memories have faded in the intervening years. *Id.* Further, the Government submits, permitting withdrawal would prejudice the victims of Ms. Ballinger's offense who expect and deserve finality upon entry of Ms. Ballinger's guilty plea. *Id.*

Based on the foregoing, the Government asks the Court to deny Ms. Ballinger's motion to withdraw. *Id.* at 12.

### C.    Kelly Ballinger's Reply

Ms. Ballinger replies by first noting the points of agreement she shares with the Government: to wit, the applicable legal standard, that her Rule 11 hearing was not deficient, and that she accepted the prosecution version. *Def.'s Reply* at 1. However, she reiterates her position that, "if she had been made aware of the scope of the Government's allegations and had been fully advised by counsel on that issue, she would not have pleaded guilty." *Id.* at 2.  She again insists that her lack of this information renders her plea not knowing, intelligent, or voluntary. *Id.*

Ms. Ballinger directs the Court to *United States v. Arce-Ayala*, 91 F.4th 28 (1st Cir. 2024), in which a criminal defendant was incorrectly advised by the district court that he would receive credit on his federal sentence for time spent incarcerated pursuant to a conviction by a Commonwealth of Puerto Rico court. *Id.* (citing *Arce-Ayala*, 91 F.4th at 33).  Upon realizing he would not receive such credit, the *Arce-Ayala* defendant filed a motion to withdraw his guilty plea, which the district court denied. *Id.* (citing *Arce-Ayala*, 91 F.4th at 35).  The First Circuit Court of Appeals vacated the defendant's conviction on appeal, concluding that the defendant did not understand the consequence of his plea. *Id.* (citing *Arce-Ayala*, 91 F.4th at 30-31, 41 ("ineffective assistance of counsel may be a 'fair and just reason' to withdraw a guilty plea or may render a plea unknowing or involuntary") (quoting *United States v. Fernandez-Santos*, 856 F.3d 10, 17 n.3 (1st Cir. 2017))).  "Similar to *Arce-Ayala*," Ms. Ballinger says, she "did not understand the consequences of her guilty plea based on the scope and amount to the alleged criminal conduct set forth in the audit report."

*Id.* For this reason, she asks the Court to grant her withdrawal of her guilty plea. *Id.*

### D.    The Parties' Joint Stipulation

The parties submit two agreed-upon facts:

[1] The third-party audits commissioned by the corporate victim and the victim's insurance company were not provided to the defense prior to entry of the defendant's guilty plea on May 1, 2024. These materials were produced to the defense not later than September 25, 2024. These audits do not contain any exculpatory information or information favorable to the defendant.

[2] The victim's loss figure is contained in the Victim Impact Statement attached to the draft presentence report dated May 30, 2024.

*Stipulation* at 1.

## III.    LEGAL STANDARD

A defendant may withdraw a guilty plea before sentencing if she "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). The First Circuit has described this standard as "liberal and permissive but not toothless," *Arce-Ayala*, 91 F.4th at 36 (internal quotation marks and citation omitted), and "liberal allowance is not to be confused with automatic allowance." *United States v. Merritt*, 755 F.3d 6, 11 (1st Cir. 2014); *accord United States v. Flete-Garcia*, 925 F.3d 17, 24 (1st Cir. 2019) (holding a defendant does not have "an unfettered right to retract a guilty plea") (quoting *Merritt*, 755 F.3d at 9).

In considering whether a defendant has presented a "fair and just reason" under Rule 11, courts consider: "(1) whether the original plea was knowing, intelligent, and voluntary and in compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the

defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is permitted." *Arce-Ayala*, 91 F.4th at 36. The "core concerns of Rule 11—whether the plea was voluntary, intelligent, and knowing—are the most important factors to consider." *Isom*, 580 F.3d at 52 (citations and internal quotation marks omitted)." A defendant does not have an unfettered right to retract a guilty plea and he bears the burden to establish a fair and just reason for withdrawal." *Dunfee*, 821 F.3d at 127 (internal quotation marks and citation omitted).

## IV.    DISCUSSION

To determine the propriety of granting Ms. Ballinger's request to withdraw her guilty plea, the Court applies each of justifications provided by the First Circuit's well-articulated standard to the facts in Ms. Ballinger's case.

### A.    Voluntary, Intelligent, and Knowing Guilty Plea

The Court begins by considering the "most important factors": whether Ms. Ballinger's plea was voluntary, intelligent, and knowing when entered. *Isom*, 580 F.3d at 52. To do so, the Court first reviews in detail its Rule 11 colloquy with Ms. Ballinger. The Court observes that Rule 11 contains fifteen subparts that a trial court is required to review with a defendant before accepting a guilty plea. FED. R. CRIM. P. 11(b)(1)(A)-(O). The transcript of the Rule 11 hearing confirms that the Court scrupulously complied with each subsection of Rule 11 during Ms. Ballinger's guilty plea hearing. *Rule 11 Tr.* at 1-17. Ms. Ballinger makes no claim that the Court failed to comply with each of these subparts in its Rule 11 colloquy with her. *Def.'s Mot.* at 3 ("At this time, Ballinger does not contend that there were any deficiencies with this

Court's Rule 11 process"); *Def.'s Reply* at 1 ("Second, Ballinger does not contend that there was any deficiency with respect to the Rule 11 proceeding").

### 1.   Rule 11 Colloquy

#### a.   Kelly Ballinger's Competency

First, the Court at the Rule 11 hearing endeavored to ensure Ms. Ballinger's competency. It asked her questions regarding her age, *Rule 11 Tr.* at 3:18-21, her level of education, *id.* at 3:22-23, and her medications, *id.* at 3:24-7:4, specifically confirming that any medications did not affect Ms. Ballinger's ability to understand the proceedings. *Id.* at 6:24-7:1 (THE COURT: Do you think your taking those medicines affects your ability to understand these proceedings? THE DEFENDANT: No, Your Honor"). The Court further confirmed that Ms. Ballinger believed herself competent, *Id.* at 7:16-7:18 ("THE COURT: Do you, yourself, believe you're competent to proceed this afternoon? THE DEFENDANT: Yes, Your Honor") and that Attorney Bourget did so as well. *Id.* at 7:22-25 ("THE COURT: Do you have any concerns about her competence? MR. BOURGET: No, I do not have any concerns. She is competent, Your Honor"). Based on these questions and responses, the Court concluded Ms. Ballinger was competent, a finding not challenged in Ms. Ballinger's motion. *Id.* at 8:1-3.

#### b.   Representation by Attorney Bourget

The Court next questioned Ms. Ballinger's satisfaction with her representation by Attorney Bourget and whether he was authorized to speak on Ms. Ballinger's behalf at the Rule 11 hearing; Ms. Ballinger answered both questions affirmatively. *Id.* at 8:8-13.

14

### c.    The Government's Dismissal of the Forfeiture Allegation

The Court remarked that the superseding indictment contained a forfeiture allegation but no preliminary order of forfeiture had been filed.  Counsel for the Government responded: "That's correct, Your Honor.  I anticipate judgment in this case may include a significant restitution obligation, and we're not pursuing a forfeiture as well."  *Id.* at 8:21-9:2.  The Government subsequently moved to dismiss the forfeiture allegation, which the Court granted without opposition from the Defendant at the Rule 11 hearing.  *Id.* at 9:3-11.

### d.    Admission of Actual Guilt

After Ms. Ballinger entered a plea of guilty to Counts 1 and 3 of the superseding indictment, *id.* at 9:13-20, the Court ensured she did so based on her actual guilt:

> THE COURT: Thank you. Now Ms. Ballinger, I have a very important question for you.  And obviously in this courtroom, I require an honest and truthful answer.  Have you pleaded guilty to the charges contained in Counts 1 and 3 of the superseding indictment because you are actually guilty of those crimes and for no other reason?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And Mr. Bourget, are you satisfied your client has pleaded guilty to these crimes because she is actually guilty?
>
> MR. BOURGET: Yes, Your Honor.

*Id.* at 9:21-10:6.

### e.    Ms. Ballinger's Knowledge of the Charges

The Court confirmed Ms. Ballinger had received a copy of the superseding indictment, that she had discussed it with Attorney Bourget, and that Attorney

Bourget had explained to her the elements and nature of the charges against her and the penalties that might be imposed. *Id.* at 10:7-25.

The Court next read Counts 1 and 3 of the superseding indictment and asked Ms. Ballinger if she understood the charges set forth in Count 1 and 3:

> THE COURT: So I'm going to focus on Count 1 and then Count 3. Count 1 alleges embezzlement from an organization receiving federal funds. It alleges at all times relevant to indictment, Organization 1 was an organization that received in excess of $10,000 in federal program benefits, funded by the United States Department of Housing and Urban Development, in any one-year between 2017 and 2021. It alleges that you were an agent of Organization 1. It goes on to allege that beginning not later than December 2017 and continuing until June 14th, 2021, in the District of Maine, which means the state of Maine, you embezzled, stole, obtained by fraud or otherwise without authority, knowingly converted to the use of a person other than the rightful owner, and intentionally misapplied property valued at $5,000 or more, which included funds that were owned by and were under the care, custody, and control of Organization 1, all in violation of federal criminal law. Do you understand the charge set forth in Count 1 of the superseding indictment?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: It also alleges in Count 3 that you engaged in a conspiracy to alter postal money orders. It alleges that beginning on a date unknown but not later than July 2019 and continuing until about June 2021, in the District of Maine, again the state of Maine, you knowingly and intentionally conspired and agreed with Kathleen Conway to falsely alter, in a material respect and with an intent to defraud, money orders provided and issued by and under the direction of the postal service and payable in the United States. It states specifically that you directed tenants of an apartment building, managed by Organization 1, to pay rent via blank postal money orders. And that you and Ms. Conway received rent payments from the tenants, that you and Ms. Conway falsely altered the name opposite the words, pay to, from blank to either yourself or Ms. Conway on the faces of the money orders, knowing that you were not the intended payee of the money order. It alleges that you did so on multiple dates in 2019, 2020, and 2021, including the dates set forth below. And the dates set forth below ranged from April 23, 2019, to March 30, 2021. And they list 14 separate incidents in which they alleged -- the superseding indictment alleges that these postal money

orders were altered.  It then goes on to say on multiple dates in 2019, 2020, and 2021 you deposited altered postal money orders into your own personal bank account for personal gain.  And then it says, [o]n multiple dates in 2019, 2020, and 2021, Kathleen Conway did the same, all in violation of federal criminal law.  Do you understand the charge set forth in Count 3 of the superseding indictment?

THE DEFENDANT: Yes, I do, Your Honor.

*Id.* at 11:7-13:7.

### f.    The Court's Recitation of Potential Penalties

The Court then recited the potential penalties applicable by statute to Ms. Ballinger on each count.  Beginning with Count 1, the embezzlement charge, the Court explained:

> [THE COURT:] By pleading guilty to this crime, you're subject to being placed in jail for a period not to exceed ten years.  You're subject to a fine not to exceed $250,000, and it can be both prison and a fine.  Following any term of imprisonment, you may be placed on supervised release for a period not to exceed three years.  If you were to violate a term of supervised release, you could go back to jail for a period not to exceed two years for each violation.
>
> You are subject to a special assessment of $100.  You are subject to an order of restitution, ordering you to repay any money suffered as a consequence of your crime by the victim.  And, finally, by pleading guilty to this crime, if you're not a United States citizen, you may be removed from the United States, denied citizenship, and denied admission to the United States in the future.
>
> Turning just to Count 1, the embezzlement crime.  Do you understand these are the maximum penalties that may be applicable to the crime to which you're pleading guilty?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 13:14-15:7.  The Court next detailed the maximum statutory penalties applicable to Ms. Ballinger on Count 3, the conspiracy charge, explaining:

17

[THE COURT:] Count 3, the conspiracy crime.  By pleading guilty to this crime, you're subject to the following maximum penalties.  You're subject to being place in jail for a period not to exceed five years.  You're subject to a fine not to exceed $250,000, and it can be both prison and a fine.

Following any term of imprisonment, you may be placed on supervised release for a period not to exceed three years.  If you were to violate a term of supervised release, you could go back to jail for a period not to exceed two years for each violation.  You're subject to a special assessment of $100.  You're subject to a restitution order as I described previously.

And, finally, you're subject to the same provisions of deportation and denial of citizenship if you're not a United States citizen.

Do you understand that these are the maximum penalties that may be applicable to Count 3, the conspiracy count to which you're pleading guilty?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 13:14-15:7.

### g.    **Waived Rights**

The Rule 11 hearing transcript also confirms that the Court complied with the obligation to inform Ms. Ballinger of the legal rights she was waiving by pleading guilty, including the right to plead not guilty, the right to a jury trial, the right to be represented by counsel at the trial, the right to confront and cross-examine witnesses, the right to compel the attendance at trial of witnesses, and the express waiver of those rights.  *See id.* at 15:7-17:24; FED. R. CRIM. P. 11(b)(1)(B)-(F).

### h.    **Contents of the Prosecution Version**

The Court next satisfied itself as to the factual basis for Ms. Ballinger's guilty plea, confirming with both the Government and Attorney Bourget that they had reviewed the prosecution version and the admissible portion of the evidence set forth

therein would prove Ms. Ballinger's guilt beyond a reasonable doubt. *Id.* at 18:1-19.

The Court then inquired the same of Ms. Ballinger:

> THE COURT: Ms. Ballinger, would you stand again, ma'am[?]  I have before me a document that is entitled, prosecution version. Have you seen that document?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: This is a very important document, correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: It basically sets forth, in a fair amount of detail, what the Government says you did to commit these two federal crimes, correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you look at it carefully to determine whether it was accurate?
>
> THE DEFENDANT: Yes, we did, Your Honor.
>
> THE COURT: Did you have a chance to consult with Mr. Bourget about the document?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Now I have a very important question and, again, I require an honest and truthful answer. Do you disagree in any way with what is set forth in the prosecution version?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Is the information set forth in the prosecution version true to your own personal knowledge?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 19:1-19.

### i.    The Plea Agreement

The Court proceeded with an extended inquiry into the voluntariness of Ms.

Ballinger's plea agreement, confirming with the Government and her counsel that

she entered into the plea agreement of her own free will and not as a result of threats
or force, that one prior formal plea offer was made by the Government and rejected
by Ms. Ballinger, and that she agreed to the terms the Government's a second plea
offer. *Id.* at 19:25-21:20. The Court then confirmed this information was true to her
knowledge with Ms. Ballinger directly, before inquiring about the plea agreement:

> THE COURT: Did you read this document before you signed it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you have a chance to consult with Mr. Bourget about
> the significance of the agreement before you signed it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you understand what you were signing?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Did you sign it voluntarily?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: In signing this agreement, did you intend to agree to all
> of its terms and conditions?
>
> THE DEFENDANT: Yes, Your Honor.

*Id.* at 2:21-22:9.

In addition to the consummated plea agreement, the Court complied with
*Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), and
questioned counsel and Ms. Ballinger about plea offers, the Government's prior plea
offer, and Ms. Ballinger's decision not to accept that plea offer. *Rule 11 Tr.* at 20:5-
21:9. Ms. Ballinger makes no claim that Attorney Bourget failed to communicate a

prior plea offer to her.  *Compare Frye*, 566 U.S. at 138; *and Torres-Estrada v. United States*, 122 F.4th 483 (2024).

### j.    Effect of the Guidelines Calculations

The Court next explained in granular detail the process for determining the applicable sentencing range under the United States Sentencing Guidelines:

> THE COURT: Now the sentencing commission's guidelines will be considered by me in determining your sentence.  I have an obligation to calculate the applicable sentencing guideline range, to consider that range, to consider possible increases and decreases under the guidelines.  Once I fix the applicable sentencing guideline range, I treat that as advisory.  I sentence you in accordance with certain factors as set forth in federal criminal law.  Those factors include the nature and circumstances of your offenses, your own history and characteristics, the need to provide restitution to the victim, the need to deter you from future crimes, the need to deter others from committing similar crimes, and the need for just punishment.  Have you and your lawyer talked about how these issues may affect your sentence?

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: I can't determine the advisory guideline sentence until after I've read a presentence report that the probation office will prepare and until I've given your lawyer and the prosecutor an opportunity to challenge the facts in the report.  After I determine what advisory guideline applies to your case, I still have authority to impose a sentence that is more severe or it could be less severe than the sentence called for by the applicable guideline. Do you understand?

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: And if I were to do that, if I were to impose a sentence more severe than the one called for by the guideline, you will have no right then to withdraw your guilty plea. Do you understand?

> THE DEFENDANT: Yes, Your Honor.

*Id.* at 24:22-26:1.

### k.    Voluntariness of Ms. Ballinger's Plea

The Court specifically addressed the voluntariness of Ms. Ballinger's plea to satisfy itself that she was entering her guilty plea voluntarily:

> THE COURT: Aside from the written plea agreement, has anyone made any promises to you in an effort to get you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anyone made any promise to you other than what is set forth in the plea agreement as to what the prosecutor's recommendation at the time of the sentencing hearing is going to be?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anyone made any promise to you as to what kind of sentence I will impose?
>
> THE DEFENDANT: No, Your Honor.

*Id.* at 26:8-19.

### l.    Accepting Ms. Ballinger's Plea

Based on all of the foregoing, the Court asked Ms. Ballinger a final time if she still wished to enter a guilty plea, to which she responded: "Yes, Your Honor." *Id.* at 26:20-23.  The Court thus accepted her guilty plea as tendered to Counts 1 and 3 of the superseding indictment.  *Id.* at 27:3-16.

### 2.    Assessment of Rule 11 Hearing

The Rule 11 hearing transcript confirms that, when Ms. Ballinger entered her guilty plea, she did so knowingly, intelligently, and voluntarily.  The Court found Ms. Ballinger competent and confirmed her understanding of the charges against her, she understood these differences, she agreed to the information contained in the prosecution version and the terms of the plea agreement, and desired to enter a guilty

22

plea despite her knowledge of the sentencing process and potentially applicable penalties. She expressed no confusion or hesitancy over the potential range of penalties she faced by pleading guilty. "Ordinarily, it is sufficient in a plea colloquy for a district court to ascertain that a defendant is aware of the nature of the charges against [her] by reading the charges in the indictment to the defendant and obtaining [her] competent acknowledgment that [s]he understands the charges." *United States v. Fernández-Santos*, 856 F.3d 10, 16 (1st Cir. 2017) (internal alterations, quotations, and citation omitted)).

## B.    Strength of Kelly Ballinger's Reasons

In her motion to withdraw, Ms. Ballinger does not contest the adequacy of her Rule 11 hearing; rather, she asserts three separate grounds as undermining the validity of her guilty plea: 1) she lacked the relevant audit reports at the time of her plea; 2) her then counsel allegedly advised her to litigate disagreements over the audit reports after the plea; and 3) she was unaware of Ms. Conway's purportedly false statements that affected the loss amount. *Def.'s Mot.* at 3. The Court concludes none of these three arguments subverts the nature of her guilty plea as being made knowingly, intelligently, and voluntarily.

The Court addresses Ms. Ballinger's three arguments jointly because they all fail for the same three straightforward reasons: first, they implicate not an element of her guilt but the loss amount; second, the appropriate opportunity to contest the loss amount is at sentencing, not trial, and Attorney Bourget did not mislead her by advising her so; and, third, Ms. Ballinger fully knew and understood that the Court

would rely on information from the PSR to calculate the appropriate Guidelines range and impose her sentence at the time of entering her plea.

Elaborating on the first point, Ms. Ballinger pleaded guilty to embezzlement from an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A) (Count 1) and conspiracy to alter postal money orders, in violation of 18 U.S.C. §§ 371 and 500 (Count 3). *Superseding Indictment* at 1-3; *Rule 11 Tr.* at 27:3-16. Of these two charges, the only financial threshold relevant to a defendant's guilt is 18 U.S.C. § 666(a)(1)(A)'s requirement that the embezzled property "is valued at $5,000 or more." 18 U.S.C. § 666(a)(1)(A)(i). The prosecution version stated that "over the course of the scheme," which the Government defined as spanning from "not later than December 3, 2017, and continuing until June 14, 2021," Ms. Ballinger "converted well in excess of $5,000 per year in tenant rent payments under the care, custody, and control of Organization #1 to her own benefit." *Prosecution Version* at 1-3 (ECF No. 57). The amount alleged in the prosecution version is the only financial amount the Government would have needed to prove for a jury to find Ms. Ballinger guilty; at the Rule 11 hearing, Attorney Bourget represented to the Court that he was satisfied the Government had the evidence to prove it*, Rule 11 Tr.* at 18:11-13, and Ms. Ballinger herself stated she had carefully reviewed the prosecution version for accuracy, understood its importance, had consulted with counsel, and did not disagree in any way with its contents, which were true to her personal knowledge. *Id.* 18:20-19:19.

Ultimately, the PO calculated a total loss amount in this case of $ $887,368. Although Ms. Ballinger disputes the extent of the loss caused by her embezzlement, she makes no claim that the loss amount would be less than the jurisdictional amount of $5,000 in 18 U.S.C. § 666(a)(1)(A)(i), and given the $837,368 total loss described in the PSR, it is highly implausible that she could legitimately make such a claim. Nothing before the Court suggests Ms. Ballinger seriously intends to challenge her guilt by contesting the Government's ability to prove the elements of her charges beyond a reasonable doubt. *See Revised PSR* ¶ 19 ("[T]he defendant stated that she had no objection to the prosecution version filed in this case"); *Def.'s Mem for Presentence Conf.* ¶ 2 (ECF No. 78) ("The defendant does not contest the government's statement of the offense"); *Def.'s Sentencing Mem.* at 2 ("Kelly Ballinger acknowledged and accepted the prosecution version of the offense in its entirety. She did so in open court. During her Rule 11 guilty plea, Kelly admitted to a complete factual basis for the plea. She truthfully admitted her conduct in the offenses of conviction"). The record shows that Ms. Ballinger entered her guilty plea knowingly, voluntarily, and intelligently of the Government's ability to prove her guilt, and she does not contend the loss amount changes that. Rather, she takes issue with the audit reports and Ms. Conway's statements as relevant to the loss amount.

On the Court's second point, the loss amount goes not to her guilt, but the severity of her sentence and, as such, the appropriate forum for her to present evidence as to the loss amount and to contest Ms. Conway's statements is at her sentencing hearing. *See United States v. Akoto*, 61 F.4th 36, 45 (1st Cir. 2023) ("'In a

fraud case resulting in financial loss, the defendant's guideline sentencing range is determined in part' by the amount of loss" (quoting *United States v. Flete-Garcia*, 925 F.3d 17, 28 (1st Cir. 2019)); *see also, e.g., United States v. Prosperi*, 686 F.3d 32, 37, 50 (1st Cir. 2012) (noting "[t]he amount of loss to be used in calculating the [guidelines sentencing range] was a hotly contested issue at sentencing" and affirming the district court's guidelines calculation made at sentencing); *United States v. Appolon*, 715 F.3d 362, 375 (1st Cir. 2013) (affirming loss amount calculation made at the time of sentencing).

At Ms. Ballinger's sentencing, she will have full opportunity to litigate the loss amount before the Court. Ms. Ballinger analogizes her case to *Arce-Ayala,* 91 F.4th 28, to assert she did not understand the consequences of her guilty plea because Attorney Bourget advised her to enter a guilty plea without receiving the audit report, but that is an inapposite comparison. In *Arce-Ayala*, during his Rule 11 colloquy, the district court informed the defendant he would receive credit for time served for a state conviction, a statement that ended up being factually incorrect. Unlike *Arce-Ayala*, Ms. Ballinger makes no claim that the Court misinformed her in any way during the Rule 11 hearing. Instead, Ms. Ballinger claims that Attorney Bourget advised her she could enter a guilty plea before receiving the audit reports based on his understanding that the total loss amount could be litigated at the sentencing hearing. But Attorney Bourget's advice accurately reflects the legal process, and thus his counsel did not undermine the knowing and intelligent nature of her guilty plea.

Finally, the Court bases its third point on Ms. Ballinger repeated confirmations at the Rule 11 hearing that she understood how the Court would make its Guideline calculations, including that the Court "can't determine the advisory guideline sentence until after I've read a presentence report that the probation office will prepare and until I've given your lawyer and the prosecutor an opportunity to challenge the facts in the report" and that her sentencing guideline range would depend on "factors includ[ing] the nature and circumstances of your offenses, your own history and characteristics, the need to provide restitution to the victim, the need to deter you from future crimes, the need to deter others from committing similar crimes, and the need for just punishment." *Rule 11 Tr.* at 24:22-26:1.

Although Ms. Ballinger has no formal education beyond high school, *see PSR* ¶ 46, she rose to the position at Harbor Management of property manager, and the sophisticated scheme she engaged in to embezzle hundreds of thousands of dollars from her employer and yet escape the scrutiny of annual audits makes it obvious that Ms. Ballinger is a highly competent and intelligent woman. It also follows that she understood the Rule 11 process and chose to plead guilty knowingly, intelligently, and voluntarily. Although Ms. Ballinger has not presented the Court with her arguments with the results of the forensic audit, the Court is skeptical that Ms. Ballinger, who after all pleaded guilty to embezzling some money from Harbor Management, did not know that her embezzlement involved hundreds of thousands of dollars. Her claim is all the more implausible since she was the person who unlawfully took the money and must have known in general, if not specific terms, the

amount she embezzled. The subsequent development that the loss amount is higher than she may have anticipated may have led to regret, but it does not change the nature of her plea.

At bottom, the facts that Ms. Ballinger did not have the audit reports, was unaware of Ms. Conway's statements, and was advised by Attorney Bourget to litigate the loss amount at sentencing does not undercut the Court's prior conclusion that her guilty plea was made knowingly, intelligently, and voluntarily.

### C.    Actual Innocence

As explained above, Ms. Ballinger has consistently acknowledged her guilt and does not assert her actual innocence in her motion to withdraw. *See Revised PSR* ¶ 19 ("[T]he defendant stated that she had no objection to the prosecution version filed in this case"); *Def.'s Mem for Presentence Conf.* ¶ 2 ("The defendant does not contest the government's statement of the offense"); *Def.'s Sentencing Mem.* at 2 ("Kelly Ballinger acknowledged and accepted the prosecution version of the offense in its entirety. She did so in open court. During her Rule 11 guilty plea, Kelly admitted to a complete factual basis for the plea. She truthfully admitted her conduct in the offenses of conviction"). Based on this record, this factor weighs in favor of the Government.

### D.    Timing of the Motion

Ms. Ballinger filed her motion to withdraw over a year after entering her guilty plea and less than a day before her scheduled sentencing hearing. *Compare Def.'s Mot.* (filed May 15, 2025) *with Min. Entry* (ECF No. 58) (Rule 11 hearing held on May

1, 2024) *and Notice of Hr'g* (ECF No. 103) (sentencing scheduled for May 16, 2025). The Government collects a persuasively robust body of caselaw in which the First Circuit, the Court of Appeals to which this Court owes its allegiance, has disfavored motions to withdraw filed from thirteen days to six months after entering the plea, much less within hours of her sentencing hearing. *Gov't Resp.* at 9-10 (collecting First Circuit authority)).

The period between Ms. Ballinger's guilty plea and motion to withdraw extends significantly beyond even the outer range of these cases, due at least in part to other unforeseen circumstances in this case that have delayed her sentencing, including Attorney Bourget's motion to withdraw as her counsel shortly before her originally scheduled sentencing and the resulting period for Ms. Ballinger to retain her current counsel. In accordance with the First Circuit, the Court concludes the long period between Ms. Ballinger's guilty plea and motion to withdraw weighs against granting her motion.

### E.    Plea Agreement

Ms. Ballinger voluntarily entered into a plea agreement in this case. In return for her pleading guilty to Counts 1 and 3 of the superseding indictment, the Government agreed to dismiss Count 2 at sentencing. *See Plea Agreement* at 1. At the Rule 11 hearing, she attested that she entered into the plea agreement voluntarily, indeed after rejecting the Government's first offer, and that she had reviewed it with her counsel and understood it. *Rule 11 Tr.* at 2:21-22:9. Her motion to withdraw does not allege any of the terms of the plea agreement are inaccurate or

coercive.  *See generally Def.'s Mot.*  The Court thus concludes this factor weighs in favor of the Government.

### F.    Prejudice to the Government

As the Court has resolved that all prior factors weigh against granting the Defendant's motion to withdraw, the Court need not consider the prejudice to the Government.  *See United States v. Doyle*, 981 F.2d 591, 594 (1st Cir. 1992) ("If the combined weight of these factors tilts in the defendant's favor, then the court must also assess the quantum of prejudice, if any, that will inure to the government").  However, the Court's considering, in its discretion, this additional factor only adds another arrow to the Government's quiver.  The Government contends its ability to present its case would be prejudiced by the substantial period of delay from when the conduct underlying this case occurred, which it alleges took place "not later than December 3, 2017, and continuing until June 14, 2021."  *Prosecution Version* at 1.  This period of delay would allow an argument that its witnesses, many of whom are elderly, have forgotten or misremembered events.  *Gov't's Resp.* at 11.  The Court accepts the Government's representation the significant delays in this case, by no fault of the Government, would prejudice its ability to prove its case.  Ms. Ballinger has not asserted that the Government's claim of prejudice is inaccurate.  *Def.'s Reply* at 1-2.

Also persuasive is the Government's argument that the victims of Ms. Ballinger's crimes are entitled to finality of judgment.  *Id.*  The Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(7), affords victims "the right to proceedings free from

unreasonable delay."    The victims of Ms. Ballinger's crimes have been waiting between five and nine years since she committed her criminal conduct and over a year since her guilty plea.  Granting Ms. Ballinger's motion to vacate would mark a substantial step backward in these proceedings and certainly further delay its ultimate resolution.  The Court concludes the prejudice to the Government weighs against granting Ms. Ballinger's motion to vacate.

## V.    SUMMARY

The Court concludes that Ms. Ballinger's guilty plea was knowing, intelligent, and voluntary when entered and that she has failed to establish strong reasons justifying its withdrawal.  Further, she makes no claim of actual innocence, the delay between the entry of her plea and motion to withdraw is substantial, she entered into a plea agreement the terms of which she does not contest, and the Government would suffer prejudice as a result of granting her withdrawal.  At bottom, after applying the considerations enumerated by the First Circuit to her case, the Court concludes Ms. Ballinger has failed to present a "fair and just reason" to withdraw her guilty plea and denies her motion to withdraw guilty plea.[4]

---

[4]       In her motion to vacate, Ms. Ballinger requested a testimonial hearing to present evidence in support of her motion, *Def.'s Mot.* at 4; however, after the Court scheduled the evidentiary hearing, the parties notified the Clerk's Office that they did not intend to proceed with a hearing and would instead submit a stipulation.  *See Stipulation*.  Ms. Ballinger has thus waived any right to an evidentiary hearing or oral argument.  The Court deems Ms. Ballinger's request for an evidentiary hearing to have been withdrawn and, to the extent the request in Ms. Ballinger's motion for an evidentiary hearing remains effective, the Court rejects it as unnecessary to resolve the motion.  *Isom,* 85 F.3d at 838 ("We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion") (citation omitted).

## VI.    CONCLUSION

The Court DENIES Kelly Ballinger's Motion to Withdraw Guilty Plea (ECF No. 108)).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of June, 2025